JOURNAL ENTRY AND OPINION
Defendant-appellant Mark Munz ("appellant") appeals from the judgment of the trial court which convicted him of two counts of intimidation in violation of R.C. 2921.04(B), a felony in the third degree and R.C.2921.04(A), a misdemeanor in the first degree, as amended. For the foregoing reasons, we affirm.
The appellant was indicted by the Cuyahoga County grand jury on a two count indictment which charged him with intimidation in violation of R.C. 2921.04(A). The appellant waived a jury trial and a bench trial was conducted on March 7, 2001. The court found the appellant guilty of the charges and sentenced the appellant on March 8, 2001 to a term of imprisonment of two years for count one and six months for count two, to be served concurrently.
A review of the record indicates that the appellant was on parole at all times during the incidents which led to his indictment. The first count of the indictment revolves around the events occurring on June 28, 2000. After an evening of drinking at a local bar the appellant and his wife began arguing. When the appellant drove to another bar, the victim waited in their vehicle, and the argument continued after the appellant returned to the vehicle and as they drove home. The victim testified that the appellant struck her on the chin, and then told her that if she spoke to anyone, including the police, that when he got out on parole again, he would get a gun and blow her head off. (TR. 29).
The victim testified that shortly after arriving at their home, the appellant informed her that he had paged a crack dealer and was waiting for a telephone call and that she should not touch the phone. When the telephone rang, she answered it and informed the person on the line that she was calling the police. The appellant then struck his wife in the chest. (TR. 30). The victim later attempted to calm the situation and talk to her husband about getting help. This enraged the appellant who began hitting, biting and punching her. (TR. 37). The appellant testified and admitted that he struck his wife in the chest and under the chin and bit her. (TR. 187).
The victim was able to telephone her sister, who then contacted the Euclid police department. (TR. 39). Two Euclid police officers responded to the residence. However, the victim denied any altercation with the appellant and hid the bite marks on her hand from the officers. (TR. 39). Thinking that her thumb may have been broken, the victim sought medical attention. Her mother accompanied her to a hospital where an employee of the hospital telephoned the police. One of the same police officers who responded to her residence, arrived at the hospital and the victim informed him that she was afraid due to her husband's threats and refused to sign a complaint. (TR. 42). The victim testified that the appellant made it clear that if she spoke to the police or his parole officer that he knew "how to get rid of a body" and "she would pay for it." (TR. 38). The police officer observed the victim's injuries and proceeded to arrest the appellant for domestic violence. The Adult Parole Authority then placed a hold on the appellant. (TR. 43).
The second count of intimidation is based upon a June 30, 2000 collect telephone call the appellant placed to his wife from the Euclid jail, wherein he requested that she change her story and threatened to commit suicide if she proceeded with the charges against him. (TR. 46). As the appellant was speaking to her, the Adult Parole Authority was arriving to interview the victim concerning the events and she ended the call.
The appellant was charged with and convicted of domestic violence in the Euclid Municipal Court, for which he was sentenced to six months imprisonment prior to this case.
The appellant's first assignment of error is as follows:
 THE INTRODUCTION OF DETAILS SURROUNDING THE DOMESTIC VIOLENCE CONVICTION WHEN THE APPELLANT OFFERED TO STIPULATE PURSUANT TO OLD CHIEF VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION.
The appellant argues that the trial court abused its discretion when it permitted the introduction into evidence of his misdemeanor conviction for domestic violence over his offer to stipulate that his wife was a victim of crime, an element of the intimidation offense.
The Ohio Supreme Court has stated that "[p]ursuant to Evid.R. 403(A), the court is required to weigh the probative value of the evidence against the danger of unfair prejudice, confusion of the issue, or misleading the jury. When considering evidence under Evid.R. 403, the trial court is vested with broad discretion and an appellate court should not interfere absent a clear abuse of that discretion." State v. Allen
(1995), 73 Ohio St.3d 626, 632-633, 653 N.E.2d 675, 684.
We review the trial court's decision for an abuse of discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140. An abuse of discretion implies that the court's ruling was unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 404 N.E.2d 144. To find an abuse of discretion, this court must find that the trial court committed more than an error of judgment. State v. Reed (1996), 110 Ohio App.3d 749, 752,675 N.E.2d 77 citing to State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343.
The appellant relies on Old Chief v. United States (1997), 519 U.S. 172,117 S.Ct. 644, wherein the United States Supreme Court held as follows:
 A district court abuses its discretion under Rule 403 if it spurns a defendant's offer to concede a prior judgment and admits the full judgment record over the defendant's objection, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction.
Old Chief, at syllabus.
Initially we note that Old Chief expressly confines its holdings to cases involving proof of felon status and based on the facts in the casesub judice, provides this court with only persuasive weight. In OldChief, the defendant was charged with assault with a dangerous weapon and violating 18 U.S.C. § 922(g)(1) which makes it unlawful for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year * * * to possess in or affecting commerce, any firearm * * *." Old Chief at 175,117 S.Ct. at 647. The U.S. Supreme Court found that the unfair prejudice of introduction of the prior conviction substantially outweighed the probative value. Id. at 192, 117 S.Ct. at 655.
In the instant case, the act of domestic violence which the appellant desired to exclude by stipulating that his wife was a victim of a crime was an essential part of the later criminal behavior. The prosecution's burden of proving that his wife was a "victim of a crime" is an essential element of intimidation under R.C. 2921.04. See State v. Payne (Mar. 31, 1999), Lake App. No. 97-L-284, unreported at 8 (distinguished Old Chief
finding that evidence concerning the name and nature of the prior conviction was necessary in order for the jury to find the defendant guilty of the charged offense.); State v. Carr (Dec. 10, 1999), Lake App. No. 98-L-131, unreported at 10-11 (distinguished Old Chief and found that the name and nature of the prior conviction were necessary to establish an element of the offense in order for the jury to find the defendant guilty.)
Although domestic violence is not an element of the intimidation charge, this evidence was relevant to the manner in which the appellant threatened the victim. This court has previously distinguished Old Chief
and stated that regardless of any stipulation agreed to prior to trial, the State retains the right to introduce details surrounding the offense for limited purposes. For instance, details may be introduced to show the offender's intent and the fear of harm he caused to the victim since many of the actions may have seemed innocuous absent the background information. State v. McGrath (Sept. 6, 2001), Cuyahoga App. No. 77896, unreported at 14 (Evidence of the prior assault convictions was permitted as the convictions carried relevance apart from the fact that they existed.)
The record demonstrates that the trial court permitted the introduction of the domestic violence charge "for the purpose of background and the mindset of the victim" and the court stated that it would "bear all that in mind in an effort to avoid any prejudice to the defendant." (TR. 32).
We find that the domestic violence went not only to the element of "victim of a crime" but also to the method and manner in which appellant used force and threat of force to intimidate his wife. The appellant has failed to establish that the court abused its discretion or that he was prejudiced by the introduction of the evidence. The first assignment of error is not well taken.
The appellant's second assignment of error is as follows:
THE EVIDENCE IS INSUFFICIENT TO CONVICT THE APPELLANT.
The appellant argues that the evidence was insufficient to meet the elements required to convict him of felony intimidation pursuant to R.C.2921.04(B).
 With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560.
State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541,546.
"The relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S. 307, at the syllabus.
This court has stated as follows:
 A sufficiency claim raises a narrow question of law that we review de novo. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. We review the record to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Stallings (2000), 89 Ohio St.3d 280, 289, 731 N.E.2d 159, 171 (quoting Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573). As the question of sufficiency of the evidence presents a question of law, it does not allow the reviewing court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. Rep. 215, 485 N.E.2d 717, 720.
State v. Williams (Dec. 6, 2001), Cuyahoga App. No. 78932, unreported at 10.
The appellant was convicted of two counts of intimidation pursuant to R.C. 2921.04(A) and (B), as follows:
 (A) No person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
 (B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.
The State presented the testimony of the victim, police officer Buling and Detective Jorz. The appellant testified that he struck his wife but denied threatening her. However, she testified that he threatened to get a gun and blow her head off if she reported anything that would get him into trouble with the police or the Adult Parole Authority. (TR. 29). The victim also testified that after hitting her, the appellant made it clear that if she spoke to the police or the Adult Parole Authority that after spending 14 years in prison, "he knew how to get rid of a body" and that "she would pay for it." (TR. 38 and 52). The victim testified that she was afraid of her husband and she hid her injuries from the police officers who responded to her home because she was afraid they would arrest the appellant. (TR. 40 and 58). Later the same evening at the hospital, she informed the police officer that she would not sign a complaint against the appellant because he had made it clear to her what he would do to her if she said anything to anyone. (TR. 42). The victim testified that she believed her husband "meant what he said" and that "he would follow through." (TR. 42 and 68, respectively).
The appellant's threats were successful as the victim continued to refuse to bring charges against him and it was necessary for the Euclid Police Department to charge him with domestic violence based on her injuries. Officer Buling testified that the victim reacted fearfully when he informed her that he could pursue the case without her signed complaint. (TR. 90). The victim testified that she felt hindered in the filing or prosecution of criminal charges against the appellant. (TR. 67).
Detective Jorz of the Euclid Police Department testified that after the appellant was arrested he conducted an interview wherein he advised the appellant of the charge against him and appellant responded "nothing can happen if nobody presses charges, right." (TR. 108).
The State's evidence demonstrated that on June 30, 2000, the appellant again attempted to intimidate and hinder his wife. The appellant called her and instructed her to tell the Adult Parole Authority that the altercation was her fault. Additionally, the appellant told the victim that if he had to serve any more time in jail he would commit suicide.[1]
(TR. 46-54). The victim testified that she was afraid the appellant thought she would press charges and he was angry with her. (TR. 53).
We find that based on our review of the record, in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. We find that there is sufficient evidence to have convicted the appellant. Accordingly, the appellant's second assignment of error is not well taken.
The appellant's third assignment of error is as follows:
THE VERDICTS ARE AGAINST THE WEIGHT OF THE EVIDENCE.
The appellant argues that his felony conviction pursuant to R.C.2921.04(B) and misdemeanor conviction pursuant to R.C. 2921.04(A) are against the manifest weight of the evidence. In regard to the manifest weight standard of review this court has held as follows:
 In contrast to the sufficiency review, a manifest weight challenge allows the appellate court to review the evidence more broadly, and sit as a thirteenth juror. Thompkins, 78 Ohio St.3d at 387, 687 N.E.2d at 546-47. The purpose of the manifest weight review is to determine whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction. Stallings, 89 Ohio St.3d at 289, 731 N.E.2d at 171 (quoting State v. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866, 882). Although the scope of review broadens, the standard of review is more deferential. Under the manifest-weight test:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Martin, 20 Ohio App.3d at 175, 485 N.E.2d at 720-21.
State v. Williams (Dec. 6, 2001), Cuyahoga App. No. 78932, unreported at 10-11.
Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; see also, State v. Smith (2000), 87 Ohio St.3d 424,721 N.E.2d 93. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." See C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
After reviewing the record and evidence, considering the credibility of the witnesses, and resolving any conflicts, we do not find that the court lost its way or committed a manifest miscarriage of justice when it convicted the appellant of both the felony and misdemeanor counts of intimidation. The appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. AND JAMES J. SWEENEY, J., CONCUR.
[1] The victim testified that appellant informed her he would "pull a `Tony'". She understood this to mean that he would kill himself as the appellant's friend Tony had hung himself one month earlier. (TR. 47).